**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

JPMORGAN CHASE BANK, N.A.,

                       *Plaintiff*,

      v.

AVARA US HOLDINGS LLC,

                      *Defendant*.

No. 23 Civ. 7145 (JGK)

ORAL ARGUMENT
REQUESTED

**<u>AVARA US HOLDINGS LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 2

    I.      The Parties ................................................................................................... 2

    II.    JPM's Misconduct ...................................................................................... 3

    III.   JPM's Failures in the Oklahoma Action .................................................... 4

    IV.   JPM's Attempts to Escape the Oklahoma Action ....................................... 6

LEGAL STANDARD ............................................................................................................... 8

ARGUMENT ............................................................................................................................ 9

    I.      The Oklahoma Action and This Action Are Parallel ............................... 10

          A.    The Actions Involve Substantially the Same Parties. .............................. 10

          B.    The Actions Involve the Same Subject Matter. ....................................... 11

          C.    The Actions Involve the Same Relief. ..................................................... 13

    II.    The Remaining *Colorado River* Factors Weigh in Favor of Abstention. ............. 15

          A.    The Oklahoma Court Has Assumed Jurisdiction Over the Property at Issue in this Case .................................................................................. 15

          B.    Litigating in This Forum Would Be Inconvenient and Inefficient. .......... 15

          C.    Litigating in This Forum Would Create Piecemeal Litigation. ................ 16

          D.    The Oklahoma Action is More Advanced Than This Action. ................... 18

          E.    State Law Supplies the Rule of Decision .................................................. 19

          F.    The Oklahoma Action Will Adequately Protect JPM's Rights. ............... 20

    III.   The Vexatious and Reactive Nature of this Action Weighs in Favor of Abstention. ............................................................................................... 20

CONCLUSION ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Abe v. New York Univ.*,
　　2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016) ............................................................ passim

*Am. Disposal Servs., Inc. v. O'Brien*,
　　839 F.2d 84 (2d Cir. 1988).......................................................................................... 9, 20

*AMNEX, Inc. v. Rowland*,
　　25 F. Supp. 2d 238 (S.D.N.Y. 1998)........................................................................ 15–16

*Ash v. Alexander*,
　　2000 WL 20704 (S.D.N.Y. Jan. 12, 2000) ............................................................... 17, 18

*Best v. City of New York*,
　　654 F. Supp. 208 (S.D.N.Y. 1986).................................................................................. 22

*Century Sur. Co. v. Prince Plaza, LLC*,
　　2016 WL 11472253 (E.D.N.Y. Feb. 16, 2016)................................................................ 14

*Clemente v. Clemente*,
　　2023 WL 2139809 (N.D.N.Y. Feb. 21, 2023) ................................................................ 15

*Colorado River Water Conservation District v. United States*,
　　424 U.S. 800 (1976)......................................................................................................... 8

*Congress Talcott Corp. v. Roslin*,
　　1996 WL 499337 (S.D.N.Y. Sept. 4, 1996).............................................................. 11, 18

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
　　862 F. Supp. 2d 170 (E.D.N.Y. 2012) ...................................................................... 10, 17

*Gabelli v. Sikes Corp.*,
　　1990 WL 213119 (S.D.N.Y. Dec. 14, 1990) .................................................................. 22

*Garcia v. Tamir*,
　　1999 WL 587902 (S.D.N.Y. Aug. 4, 1999)................................................... 13, 18, 19, 20

*Goldentree Asset Mgmt., L.P. v. Longaberger Co.*,
　　448 F. Supp. 2d 589 (S.D.N.Y. 2006)............................................................................ 19

*Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.,*
　　324 F. Supp. 2d 1202 (D. Kan. 2004)............................................................................ 11

*Iacovacci v. Monticciolo*,
　　2019 WL 2074584 (S.D.N.Y. May 9, 2019) .................................................. 8, 10, 11, 13

ii

*Krondes v. Nationstar Mortg., LLC,*
  789 F. App'x 913 (2d Cir. 2020) ................................................................. 13

*Krondes v. Nationstar Mortg., LLC,*
  2018 WL 2943774 (S.D.N.Y. June 12, 2018) ......................................... 13, 15

*Mann v. Alvarez,*
  1996 WL 535540 (S.D.N.Y. Sept. 20, 1996) ................................................ 22

*Marrero v. U.S. Bank Nat'l Ass'n,*
  2022 WL 4072936 (S.D.N.Y. Sept. 2, 2022) ........................................... 11, 15

*Mazlin Trading Corp. v. WJ Holding Ltd.,*
  2021 WL 1164127 (S.D.N.Y. Mar. 26, 2021) ................................... 20, 21–22

*Mouchantaf v. Int'l Modeling and Talent Ass'n,*
  368 F. Supp. 2d 303 (S.D.N.Y. 2005) ....................................................... 16, 20

*Pappas Harris Cap., LLC v. Bregal Partners, L.P.,*
  2021 WL 3173429 (S.D.N.Y. July 27, 2021) ................................... 9, 10, 11, 16

*Phillips v. Citibank, N.A.,*
  252 F. Supp. 3d 289 (S.D.N.Y. 2017) ................................................... 15, 16, 17

*Radioactive, J.V. v. Manson,*
  153 F. Supp. 2d 462 (S.D.N.Y. 2001) .............................................................. 20

*Sitgraves v. Fed. Home Loan Mortg. Corp.,*
  265 F. Supp. 3d 411 (S.D.N.Y. 2017) ...................................................... passim

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.,*
  752 F.3d 239 (2d Cir. 2014) ............................................................................. 8

*Telesco v. Telesco Fuel & Masons' Materials, Inc.,*
  765 F.2d 356 (2d Cir. 1985) ...................................................................... 19, 21

*The Cadle Co. v. Cohen,*
  173 F.3d 843 (2d Cir. 1999) ............................................................................ 22

*U.S. Bank Nat'l Ass'n v. E. Fordham DE LLC,*
  804 F. App'x 106 (2d Cir. 2020) ................................................................. 8, 13

iii

Defendant Avara US Holdings LLC ("Avara US") respectfully submits this memorandum of law in support of its motion to dismiss ("Motion") Plaintiff JPMorgan Chase Bank, N.A.'s ("JPM") complaint in this matter.[1]

## PRELIMINARY STATEMENT

On August 17, 2022, JPM filed an action in Oklahoma state court (the "Oklahoma Action") seeking money judgment and foreclosure against Avara Pharmaceutical Technologies, Inc. ("Avara Norman"), the wholly owned subsidiary of the defendant in this case, alleging that Avara Norman is in default because it failed to fully repay certain loans by their purported maturity date. Avara Norman vigorously contests this alleged default and alleges in the Oklahoma Action that JPM is itself in material breach of the loan agreement and has engaged in substantial misconduct over a nearly five-year period.  In ruling on initial motion practice following a multi-day evidentiary hearing, the Oklahoma court concluded "there is a genuine dispute between the parties about whether there has been any default under the credit agreement, which party (if any) defaulted, and the amount of damages owed from that default."  The Oklahoma court also denied JPM's procedural and substantive arguments to dismiss Avara Norman's counterclaims and compelled JPM to produce substantial discovery.  During the Oklahoma hearings on JPM's receivership motion, the JPM managing director who verified JPM's petition contradicted the sworn allegations in the petition, which JPM was forced to amend.

Thereafter, in a transparent attempt to forum shop, JPM obtained a stay of the Oklahoma action and then filed this action, alleging that Avara US is in default of the same agreement for

---

[1]     Avara US, Avara Pharmaceutical Services Ltd., Avara Holdings Ltd. ("Avara Holdings"), and their affiliates are collectively referred to as "Avara" or "Avara Group."

failing to repay the same purported loan balance, seeking the same monetary judgment and seeking to foreclose on the same property.

The Court should reject JPM's tactics and dismiss the Complaint pursuant to the *Colorado River* abstention doctrine, which was designed for cases precisely like this one, where a litigant brings federal litigation that is substantially similar to pending state court litigation in an attempt to get a second bite at the apple. In filing this lawsuit, JPM seeks a quick summary judgment ruling in this Court prior to any discovery in an effort to render the Oklahoma Action moot and entitle it to foreclose on the very property at issue in Oklahoma, regardless of the results of the Oklahoma Action. JPM's summary judgment motion is baseless, for reasons Avara US will show when its opposition is filed. More fundamentally, however, the Court should not sanction JPM's blatant forum shopping and trample on the Oklahoma court's jurisdiction to decide, and continue to decide, the very issues that JPM intentionally put before that court.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    The Parties

Avara is a pharmaceutical contract manufacturer that manufactures compounds and products for some of the world's largest pharmaceutical companies. Declaration of Leonard Levie ("Levie Decl.") ¶¶ 3–4. Defendant Avara US is a holding company that owns 100% of the shares of Avara Norman, an entity that owns and operates a manufacturing facility in Norman, Oklahoma. *Id.* ¶¶ 9, 13. Avara US has no employees, operations, or current business purpose other than as a holding company for Avara Norman's equity. *Id.* ¶ 15.

In 2018, Avara approached JPM to obtain a $25 million credit facility that Avara would use to ensure that its subsidiaries had appropriate levels of operating capital. This funding structure would allow Avara to assess the operating capital needs of each of its corporate group entities to direct the cash proceeds from the credit facility as appropriate. In 2018, JPM entered into a Loan

and Security Agreement with Avara (with subsequent amendments, the "Agreement").  Dkt. 8-4.
As security for this loan, the Borrowers granted JPM security over all assets of Avara Holdings
and participating corporate group entities, including Avara US, Avara Norman, and Avara Avlon
Pharmaceutical Services Ltd. ("Avlon").  *Id.* § 1.01.  Each participating Avara corporate group
entity pledged its assets as collateral and executed the Agreement, as each entity benefited from
the JPM credit facility.  *Id.* § 5.10.  JPM is the Administrative Agent and the only lender under the
Agreement.  *Id.*, Art. VIII & Schedule 2.01.  The Agreement required, and Avara expected, that
JPM would perfect its senior secured positions to the fullest extent possible against Avara's
collateral around the globe.  *Id.* § 9.02(d).

## II.   JPM's Misconduct

Avara Group alleges that JPM has engaged in substantial misconduct in connection with
the Agreement, including by itself breaching the Agreement.[2]  Among other things, JPM failed to
properly perfect and protect its collateral rights in the assets of Avlon, which entered
administration in 2019 and liquidation in 2021.  Dkt. 8-13 ¶¶ 73–78.  Those rights, if enforced,
would have substantially—if not entirely—reduced the amounts allegedly owed to JPM.  Instead,
JPM refused to collect the Avlon cash collateral, refused to transfer its secured claims to Avara to
collect the cash collateral and repay the loan, and then completely released the collateral in breach
of the Agreement, receiving none of the proceeds from the $25 million sale of Avlon's assets.  *Id.*

---

[2]   This misconduct is more fully outlined in a prior complaint that certain Avara Group
entities filed against JPM.  Dkt. 8-13.  The plaintiffs voluntarily dismissed that action after the
Oklahoma court permitted Avara Norman to assert its counterclaims in Oklahoma, as explained
below.

¶¶ 82–84, 93.

JPM also breached the Agreement by failing to either grant Avara Holdings' request for an extension of the maturity date or permit Avara Holdings to find a new lender. *Id.* ¶¶ 3, 88, 154. After Avara Holdings exercised its right to request an extension, JPM purported to negotiate over the extension, but when the then-stated maturity date passed without JPM agreeing to or rejecting the extension request, JPM declared the loan in default and unilaterally, without notifying Avara, stopped collecting automatic payments of principal and interest from Avara Group's checking account at JPM. *Id.* ¶ 88. JPM and Avara Holdings did subsequently agree on the material terms of an 18-month extension of the maturity date, but that agreement failed solely because JPM conditioned any extension on Avara releasing all claims against JPM relating to its abandonment and release of the Avlon collateral. *Id.* ¶ 90.

**III.    JPM's Failures in the Oklahoma Action**

On August 17, 2022, after Avara Holdings refused JPM's non-negotiable "final" repayment terms, JPM filed the Oklahoma Action against Avara Norman. Dkts. 8-9, 8-18. Again, Avara US owns 100% of Avara Norman, and Avara Norman is its only substantial asset. Levie Decl. ¶¶ 9, 14.

JPM alleges in the Oklahoma Action that Avara Norman is in default of the Agreement because it failed to fully repay the purported loan balance prior to the maturity date. Dkt. 8-9 ¶¶ 24–25. JPM asserted claims for a $22,276,456.84 judgment against Avara Norman; foreclosure of mortgage over Avara Norman's real assets; foreclosure of security interests and replevin with respect to all of the collateral pledged by Avara Norman under the Agreement, including all of its equity and assets; and appointment of receiver. *See id.* ¶¶ 32–57. JPM then filed a motion for expedited appointment of a receiver (pre-selected by JPM), presumably hoping that it could secure a quick win, take full control of Avara Norman, and sell off the company's assets in order to repay

the disputed loan.  Declaration of Richard G. Baldwin ("Baldwin Decl.") ¶ 4.  The Oklahoma court, however, did not give JPM the quick relief it sought, and JPM has instead faced a series of defeats.

First, JPM's verified petition and receivership motion included false allegations, including that Avara Norman is insolvent, unable to pay its debts and expenses, and poorly managed.  During hearings on JPM's receivership motion, the JPM managing director who verified JPM's petition contradicted his sworn, defamatory allegations.  JPM was forced to amend its petition and motion, withdrawing certain allegations against Avara Norman.  *Id.* ¶ 9.

Second, on April 3, 2023, the Oklahoma court denied JPM's receivership motion, explaining that JPM "has not established a 'strong probability' of success on the merits" where "there is a genuine dispute between the parties about whether there has been any default under the credit agreement, which party (if any) defaulted, and the amount of damages owed from that default."  Baldwin Decl. Ex. E at 3; *see also id.* at 4 ("[A]t a minimum, the question of whether Avara Norman in fact defaulted on its obligations to JPM is the subject of a robust and good faith dispute.").

Third, the Oklahoma court denied JPM's motion to dismiss the counterclaims Avara Norman filed against JPM.  Baldwin Decl. ¶ 14.  Specifically, Avara Norman brought claims for breach of contract relating to JPM's unlawful release of liens, breach of the implied covenant of good faith and fair dealing for its conduct relating to the Avlon collateral and in manufacturing a default, and for abuse of process.  Baldwin Decl. Ex. D.  JPM moved to dismiss, arguing that a forum-selection clause required Avara Norman to bring its claims in New York, that Avara Norman failed to state a claim, and that the terms of the Agreement precluded Avara Norman's claims.  Dkt. 8-16.

In May, the court denied JPM's motion to dismiss the counterclaims in full.  The court found that Oklahoma state court is "the proper forum for Avara Norman's counterclaims" and that "[p]ublic interests are best served by permitting Avara Norman to fully litigate its counterclaims in this Court, where its closely related defenses against JPM's claims will already be heard and decided."  Baldwin Decl. Ex. F at 1.  The Court also noted that "[j]udicial economy is best served by permitting Avara Norman to litigate its counterclaims in Oklahoma" because requiring Avara to bring its claims in New York "would require two contentious civil actions among the same parties in two different court systems in two different jurisdictions to decide the exact same issues of fact and law."  *Id*. at 2.  The court also held that Avara Norman's counterclaims were not barred by the Agreement and that Avara Norman alleged sufficient facts to support the counterclaims.  *Id*. at 2–3.

Fourth, on the same day it denied JPM's motion to dismiss, the Oklahoma court granted Avara Norman's motion to compel documents "relevant to Avara Norman's defense that there has been no default of the Credit Agreement, its affirmative defenses that JPM has acted improperly with respect to the loan, and its counterclaims about JPM's misconduct with respect to the Avlon collateral."  Baldwin Decl. Ex. G at 2.  JPM subsequently insisted on a protective order prohibiting the use of any discovery material produced in the Oklahoma case in any other litigation, asserting in mid-July 2023 that it "cannot fathom a legitimate use for the materials JPMorgan produces in discovery for purposes *other than* the prosecution or defense of this action," even though JPM was almost certainly preparing this litigation against Avara US at that very moment.  Baldwin Decl. Exs. H at 4, I.

## IV.   JPM's Attempts to Escape the Oklahoma Action

After the Oklahoma court found that JPM needed to face Avara Norman's counterclaims and to produce substantial discovery, JPM began to implement its attempts to escape the Oklahoma

Action.  On July 17, 2023, JPM filed an application with the Oklahoma Supreme Court to assume original jurisdiction and issue writs directing the Oklahoma court to dismiss Avara Norman's counterclaims based on the forum-selection clause.   Baldwin Decl. ¶ 21.  JPM also filed a motion to stay all further discovery and proceedings in the trial court pending the Oklahoma Supreme Court's decision, which the trial court granted.  *Id*. ¶¶ 22, 24.  The Oklahoma Supreme Court set the matter for oral presentation to the Supreme Court referee on August 15, 2023.  *Id.* ¶ 25.

On August 11, 2023, two business days before the scheduled hearing before the Oklahoma Supreme Court referee, JPM filed this action against Avara US.  Dkt. 1.  JPM's first cause of action for breach of contract is premised on its allegation that JPM fully performed its obligations under the Agreement, and that "Avara US has materially breached the [Agreement] . . . by failing to deliver the principal, interest, fees, expenses, and other amounts payable . . . as of the Final Maturity Date."  *Id*. ¶ 31.  In its second and third causes of action, JPM seeks (i) to foreclose on Avara US' equity interest in Avara Norman in order to exercise direct control over these entities, and (ii) "to exercise an irrevocable proxy," including "any and all voting and other consensual rights in the Pledged Avara Entities" including Avara Norman.  *Id*. ¶ 38.

On the same day it filed the complaint, JPM also filed a motion for partial summary judgment, seeking expedited judgment prior to any discovery.  Dkt. 6.  The timing of this action makes JPM's motives clear—after failing to obtain quick relief in Oklahoma, after enduring a series of defeats on the merits of its claims, after failing to dismiss Avara Norman's counterclaims, and after being ordered to produce substantial discovery, JPM sought a stay of the Oklahoma Action and then immediately rushed to this Court to attempt to get a quick judgment prior to having

to produce the discovery required by the Oklahoma court.[3]

## **LEGAL STANDARD**

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), "the Supreme Court determined that a federal court may decline to proceed with a case, which is properly before it, when parallel litigation is pending in a state court." *Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017). "A motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure." *Iacovacci v. Monticciolo*, 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019). In resolving a motion to dismiss under Rule 12(b)(1), "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

"In deciding whether to abstain under [the] *Colorado River* [doctrine], a district court must first determine whether the federal and state court cases are parallel." *U.S. Bank Nat'l Ass'n v. E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020). If the federal and state actions are parallel, the Court must consider six factors in deciding whether to exercise its discretion to abstain:

> the assumption by either the state or federal court of jurisdiction over any res or property, the inconvenience of the federal forum, the

---

[3]     On September 11, 2023, after JPM had filed this action, the Oklahoma Supreme Court unanimously denied JPM's application to assume original jurisdiction, confirming that Avara Norman's counterclaims will be heard in Oklahoma. Baldwin Decl. ¶ 28.

> avoidance of piecemeal litigation, the order in which jurisdiction was obtained, whether federal or state law provides the rule of decision, and whether the state court proceeding will adequately protect the rights of the party seeking to avail itself of federal court jurisdiction.

*Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988).  "As an additional factor, the Supreme Court has found considerable merit in the idea that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*."  *Abe v. New York Univ.*, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (cleaned up).  The factors are not a "mechanical checklist," but rather require "a careful balancing of the important factors as they apply in a given case."  *Sitgraves*, 265 F. Supp. 3d at 413.  Finally, under *Colorado River*, outright dismissal carries no more weight—and warrants no greater hesitation—than a stay.  *Pappas Harris Cap., LLC v. Bregal Partners, L.P.*, 2021 WL 3173429, at *12 (S.D.N.Y. July 27, 2021).

## ARGUMENT

The Court should abstain from exercising jurisdiction over this matter pursuant to *Colorado River* and dismiss JPM's complaint without prejudice.  First, this case and the Oklahoma Action are parallel—they involve substantially the same parties (Avara and JPM), the same legal and factual issues (whether Avara is in default of the Agreement and whether JPM is itself at fault), and the same requested relief (judgment for the amounts allegedly due under the loan and foreclosure on Avara Norman and its assets).  Second, each of the *Colorado River* factors favors abstention.  Finally, JPM filed this case in response to unfavorable rulings in the Oklahoma Action—an exceptional circumstance that the Second Circuit has repeatedly held warrants *Colorado River* abstention.

I.      **The Oklahoma Action and This Action Are Parallel.**

There can be no question that this action and the Oklahoma Action—in which JPM alleges that Avara affiliates are in default of the same loan agreement and seeks foreclosure of the same property as relief—are parallel.  "Federal and state proceedings are parallel if substantially the same parties are contemporaneously litigating substantially the same issue in both forums." *Iacovacci*, 2019 WL 2074584, at *4 (cleaned up).   "[T]he court may consider whether the actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested."  *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012). "Perfect symmetry of parties and issues is not required.  Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Abe*, 2016 WL 1275661, at *6.

A.      The Actions Involve Substantially the Same Parties.

This case and the Oklahoma Action involve substantially the same parties because the interests of the parties in each case are "congruent," and "they would benefit from the same outcome." *Pappas Harris Cap.*, 2021 WL 3173429, at *5; *see also Iacovacci*, 2019 WL 2074584, at *5 (parties need not be identical—they need only be "substantially the same" or "closely related").

The plaintiff in both actions is JPM as Administrative Agent on behalf of itself as the sole Lender under the Agreement. *Compare* Dkt. 1 at 1 & ¶ 2, *with* Dkt. 8-9 at 1.  The defendant in the Oklahoma Action is Avara Norman, and the defendant here is Avara US.  Dkt. 1 at 1; Dkt. 8-9 at 1; Baldwin Decl. ¶ 3.  Avara US is a holding company that owns 100% of the equity of Avara

Norman.  Levie Decl. ¶ 9.[4]  Further, Avara US and Avara Norman are both Subsidiary Guarantors under the Agreement at issue in both actions.  Dkt. 1 ¶ 1; Dkt. 8-4, Schedule 3.01; Dkt. 8-9 ¶ 6. *See, e.g.*, *Pappas Harris Cap.*, 2021 WL 3173429, at *6–9 (holding defendants were congruent because federal defendant owned state defendant); *Iacovacci*, 2019 WL 2074584, at *5 (holding defendants were "closely related" because federal defendants "are the founding members of the corporate entities named in the state action"); *Congress Talcott Corp. v. Roslin*, 1996 WL 499337, at *3 (S.D.N.Y. Sept. 4, 1996) (holding defendants were substantially the same because federal defendant was a guarantor of the agreement underlying both actions and the sole shareholder of a state defendant).  Accordingly, the actions involve substantially the same parties.

     B.    <u>The Actions Involve the Same Subject Matter.</u>

Both actions also involve the same subject matter.  Here, JPM's claims in both forums are based on the same allegations that Avara Group is in default of the same Agreement for failing to repay the same purported loan balance outstanding.  *Compare* Dkt. 1 ¶¶ 18–19, *with* Dkt. 8-9 ¶¶ 24–25.  *See Sitgraves*, 265 F. Supp. 3d at 413 (holding that the issues were the same where both actions concerned the enforcement of the same agreement); *Marrero v. U.S. Bank Nat'l Ass'n*, 2022 WL 4072936, at *6 (S.D.N.Y. Sept. 2, 2022) (abstaining where "both actions turn on the validity of U.S. Bank's interest in the Property").

More specifically, both courts will be asked to determine, among other things: whether a default occurred, whether Avara Group breached the Agreement, whether JPM breached the

---

[4]    Courts have held that parents and wholly owned subsidiaries are considered "substantially the same" for purposes of *Colorado River* analysis.  *See, e.g.*, *Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.,* 324 F. Supp. 2d 1202, 1204 (D. Kan. 2004) (collecting cases).

Agreement, and any amounts due under the Agreement.  First, in both actions, JPM alleges that "[t]he Loans matured on November 30, 2021 (*i.e.*, the Final Maturity Date)," and that "[Avara] failed to repay the Loans on the Final Maturity Date."  Dkt. 1 ¶¶ 18–19; Dkt. 8-9 ¶¶ 24–25.  Second, in both actions, JPM alleges that Avara "failed to make payments when due" resulting in "payment default since the Final Maturity Date."  Dkt. 1 ¶ 21; Dkt. 8-9 ¶ 30.  Third, in both actions, JPM alleges that it has "performed its obligations under the Credit Agreement."  Dkt. 1 ¶ 30; Dkt. 8-9 ¶ 35.  Fourth, in both actions, JPM alleges that substantially the same amount is due and owing, with the only difference between the two amounts caused by the accrual of interest and the lapse of a year between filings.  Dkt. 1 ¶ 22; Dkt. 8-9 ¶ 38.

Further, if the Court were to deny this motion, Avara US would assert the same affirmative defenses and counterclaims that Avara Norman has asserted in the Oklahoma Action based on entirely the same facts, including but not limited to:

- Affirmative defenses based on JPM's failure to proceed in a commercially reasonable manner and JPM's impairment of collateral (Baldwin Decl. Ex. D at 8);

- An affirmative defense and counterclaim regarding JPM's breach of the Agreement (*id.* at 8, 30–33)

- An affirmative defense of unclean hands based on JPM's misconduct relating to the Avlon collateral and in manufacturing a default (*id.* at 9);

- An affirmative defense that JPM failed to mitigate its damages (*id.*); and

- Counterclaims for breach of the implied covenant of good faith and fair dealing (*id.* at 34–35).

In its summary judgment motion, JPM has argued that many of these affirmative defenses and counterclaims are barred by the Agreement, Dkt. 7 at 15–17; but this same issue is also before

the Oklahoma court which, for example, has already decided against JPM in ruling that the waiver provisions in "Sections 10.03(c) and 10.04 do not bar Avara Norman's counterclaims." Baldwin Decl. Ex. F at 3. Accordingly, the issues that will be presented by Avara's defenses and affirmative claims here—all arising under the parties' Agreement—will be or have already been addressed in the Oklahoma Action. *See, e.g., U.S. Bank*, 804 F. App'x at 107 (cases were parallel where "both actions [were] centered on the same parties' Loan Modification Agreement and whether either party breached its obligations under that agreement"); *Krondes v. Nationstar Mortg., LLC*, 2018 WL 2943774, at *5 (S.D.N.Y. June 12, 2018), *aff'd*, 789 F. App'x 913 (2d Cir. 2020) (abstaining in action that mostly "concern[ed] events at issue in the foreclosure action").

Indeed, in denying JPM's motion to dismiss, the Oklahoma court explicitly recognized that requiring Avara to bring its claims in New York "would require two contentious civil actions among the same parties in two different court systems in two different jurisdictions to decide the exact same issues of fact and law." Baldwin Decl. Ex. F at 2. The Oklahoma court was right: this action and the Oklahoma Action plainly involve the same subject matter. Its decision was affirmed after full briefing and oral argument when the Oklahoma Supreme Court unanimously denied JPM's writ application. Baldwin Decl. ¶ 28.

C. The Actions Involve the Same Relief.

The relief requested in both actions is also the same. Relief is considered parallel if it overlaps with the relief requested in state court. *See Iacovacci*, 2019 WL 2074584, at *6. The fact that the plaintiff asserts a different theory of recovery in the federal action does not preclude a finding that the requested relief is the same. *See Garcia v. Tamir*, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999).

In the Oklahoma Action, JPM seeks a monetary judgment for the amounts allegedly due under the Agreement, foreclosure over Avara Norman's equity and assets, and a receivership over

Avara Norman.  Dkt. 8-9 ¶¶ 32–57.  In this action, JPM likewise seeks a monetary judgment for the amount allegedly due under the Agreement, foreclosure on Avara US' equity interest in Avara Norman, and to exercise an irrevocable proxy over Avara Norman.  Dkt. 1 ¶¶ 27–40.  The relief JPM seeks in both actions is therefore, at its core, a judgment for the amount it contends is due under the Agreement, foreclosure over Avara Norman, and to control Avara Norman.  Avara US' only substantial asset is its equity in Avara Norman.  Levie Decl. ¶ 14.  The *only* other assets that Avara US pledged under the Credit Agreement, *see* Dkt. 8-5 at 63, are equity interests in entities with little or no value.  Levie Decl. ¶¶ 10–11.

In other words, if JPM is successful in this action, it will have foreclosed on the very collateral on which it seeks to foreclose in the Oklahoma Action.  And if JPM successfully forecloses on the collateral at issue in the Oklahoma Action—Avara Norman's property and assets—such collateral will more than satisfy Avara's alleged remaining loan obligations, essentially mooting this action.  Baldwin Decl. Exs. A, C; *Century Sur. Co. v. Prince Plaza, LLC*, 2016 WL 11472253, at *4 (E.D.N.Y. Feb. 16, 2016) (abstaining because the plaintiff sought "effectively the same relief" in both cases, and if plaintiff secured a victory in state court, it would obtain "complete relief that renders th[e] federal action moot").  And awarding JPM money damages for the total amount that JPM claims is due under the Agreement in both cases would provide JPM with double recovery.  Because, at its core, JPM requests the same relief in both actions based on the same facts and theories, this action and the Oklahoma Action are parallel for purposes of *Colorado River*.

## II.     The Remaining *Colorado River* Factors Weigh in Favor of Abstention.

### A.     The Oklahoma Court Has Assumed Jurisdiction Over the Property at Issue in this Case.

The first factor—the assumption of jurisdiction over any res or property—weighs in favor of abstention because adjudication of JPM's federal claims in this case would "almost certainly affect" the property at issue in the state court proceeding.  *See Clemente v. Clemente*, 2023 WL 2139809, at *4 (N.D.N.Y. Feb. 21, 2023).  When the parallel state court action is a foreclosure action, this factor strongly favors abstention.  *See Krondes*, 2018 WL 2943774, at *3.  This is true even where the federal action is *in personam*, especially where the federal claims "remain inextricably linked" with the issues regarding the res pending before the state court.  *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 299 (S.D.N.Y. 2017); *see also Marrero*, 2022 WL 4072936, at *7 (abstaining where federal *in personam* action centered on same res over which state court exercised *in rem* jurisdiction via foreclosure proceeding).

As explained above, over a year ago, the Oklahoma court exercised jurisdiction over the same property on which JPM seeks to foreclose in this action—Avara Norman's equity and real property.  Baldwin Decl. ¶ 3.  In addition to filing a foreclosure action in Oklahoma seeking to foreclose on that property, JPM also filed a *lis pendens* over certain of the property in Oklahoma.  Dkt. 8-18 at 5.  Therefore, the first factor weighs in favor of abstention.  *See Sitgraves*, 265 F. Supp. 3d at 414 (abstaining where the state court had jurisdiction over the res, while the federal court "ha[d] taken no action to assert preemptive jurisdiction over the *res*").

### B.     Litigating in This Forum Would Be Inconvenient and Inefficient.

The second factor—the inconvenience of the federal forum—also weighs in favor of abstention.  In assessing this factor, the Court should consider the place where the operative events occurred, the convenience of the witnesses, trial efficiency, and the interests of justice.  *AMNEX,*

*Inc. v. Rowland*, 25 F. Supp. 2d 238, 244 (S.D.N.Y. 1998).  "[D]uplicative, simultaneous litigation is necessarily inconvenient."  *Pappas Harris Cap.*, 2021 WL 3173429, at *11.

JPM can make no argument that litigating in this forum is more convenient than litigating in Oklahoma given that JPM explicitly chose to litigate in Oklahoma.  When Avara Norman moved to dismiss the Oklahoma Action in favor of New York based on the Agreement's forum-selection clause, JPM opposed the motion and reiterated that it believed Oklahoma was the correct jurisdiction for its foreclosure claims.  Baldwin Decl. ¶ 6.  JPM cannot have it both ways.

Trial efficiency and the interests of justice also suggest that this forum is inconvenient.  At this point, the Oklahoma court has devoted significant time evaluating the complex facts and issues involved in both matters.  The Oklahoma court has already heard testimony, analyzed the likelihood of success of JPM's claim that Avara is in default, decided two motions to dismiss, and issued discovery orders.  Baldwin Decl. ¶¶ 6, 9, 13–15.  *Sitgraves*, 265 F. Supp. 3d at 414 (holding that state court was more convenient because litigation had been pending there for substantially longer).  Further, the parties have already begun exchanging discovery, and are subject to a protective order that JPM demanded preclude Avara US from using discovery exchanged in Oklahoma in other litigation.  Baldwin Decl. ¶¶ 18–19.  Not only would the same claims, defenses, and counterclaims be re-litigated in this action, but discovery would be duplicated as well.  Convenience weighs in favor of a single action in Oklahoma.  *See Phillips*, 252 F. Supp. 3d at 299 ("[T]here is plainly inconvenience in having to litigate actively in both state and federal courts at the same time.").

C.     Litigating in This Forum Would Create Piecemeal Litigation.

The third factor—the avoidance of piecemeal litigation—is the "predominant" factor in the *Colorado River* analysis and plainly weighs in favor of abstention.  *Mouchantaf v. Int'l Modeling and Talent Ass'n*, 368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005).  "Avoiding piecemeal litigation is

16

particularly important where the issues in the parallel proceedings are the same or substantially similar, or where similarity among parties is such that it risks inconsistent and mutually contradictory determinations that could cause friction between state and federal courts." *Ash v. Alexander*, 2000 WL 20704, at *3 (S.D.N.Y. Jan. 12, 2000) (cleaned up). "This factor favors abstention even where the actions are 'merely duplicative,' such that the availability of res judicata or collateral estoppel would mitigate the risk of inconsistent outcomes." *Phillips*, 252 F. Supp. 3d at 299 (citation omitted).

Here, JPM attempts to relitigate from scratch the same issues on which Avara Norman has already obtained favorable rulings in Oklahoma, and issues that the Oklahoma court will inevitably decide in the future. If forced to litigate in both forums, Avara US and Avara Norman "could be faced with conflicting liability in the two cases." *First Keystone Consultants*, 862 F. Supp. 2d at 190. This risk is acute here, where the defendants are substantially similar but not identical, raising the "possibility that the parties who are not bound by the prior judgment may cause inconsistent judgments in subsequent lawsuits" and inevitable litigation regarding the application of res judicata and collateral estoppel. *See Abe*, 2016 WL 1275661, at *7.

The Oklahoma court has already found that "there is a genuine dispute between the parties about whether there has been any default under the credit agreement, which party (if any) defaulted, and the amount of damages owed from that default" (Baldwin Ex. E at 3)—issues that this Court will also have to decide if it denies this motion and entertains JPM's early, pre-discovery motion for summary judgment. Further, the Oklahoma court has already ruled that the Agreement does not preclude certain of Avara's counterclaims and that Avara Norman alleged adequate facts to support its counterclaims (Baldwin Ex. F at 2–3)—issues that this Court will also have to decide if it denies this motion, Avara US files the same compulsory counterclaims in this Court, and JPM

moves to dismiss them.  Such duplicative rulings on the same issues will cause substantial litigation about claim and issue preclusion.  *See Ash*, 2000 WL 20704, at *3 (third factor favored dismissal where "any finding by this Court with respect to the defendants . . . would undoubtedly breed additional litigation regarding claim and issue preclusion in the state action").

Similarly, because the relief JPM seeks here necessarily includes foreclosing on the Avara Norman facility—the same relief sought in JPM's Oklahoma Action—it is impossible for either case to produce an outcome that does not directly affect the other case.  In *Congress Talcott Corp.*, for example, the plaintiff sought to enforce the same agreement, based on the same set of events, in federal and state court simultaneously.  The court recognized that it would have to interpret the agreement, analyze its validity, and assess whether the defendant breached, as well as whether there was any breach by plaintiff, thereby duplicating the state court's efforts.  1996 WL 499337, at *5.  And because one defendant "could be found liable by one court and the other not liable by the other," the case fell into the "exceptional" category of cases warranting abstention.  *Id.*  The same is true here—there is a real risk that, based on the same set of facts, one court finds that Avara is in default of the Agreement, and the other finds that it is not and that JPM is in fact the party in breach.  This will "create the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first."  *Garcia*, 1999 WL 587902, at *5 (cleaned up).  Accordingly, the risk of piecemeal litigation weighs in favor of abstention.

D.    The Oklahoma Action is More Advanced Than This Action.

The fourth factor—the order in which jurisdiction was obtained—weighs in favor of abstention.  This factor is assessed "in terms of how much progress has been made in the two actions."  *Sitgraves*, 265 F. Supp. 3d at 414.  Where the federal case "has not moved beyond the initial pleadings and the motion to dismiss . . . it hardly seems wise to permit [the] plaintiff to start

anew in federal court."  *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985).

In this case, JPM has only filed the complaint and a simultaneous motion for partial summary judgment, which the Court has not yet considered or decided.  In Oklahoma, on the other hand, the parties have engaged in substantial litigation and the court has already seriously engaged with the merits of the case.  The Oklahoma court has decided multiple motions to dismiss, held an evidentiary hearing, and denied a receivership motion based on that hearing.  Baldwin Decl. ¶¶ 6, 9, 13–14.  Further, discovery has commenced in that case—JPM has produced documents, owes Avara Norman additional documents and interrogatory responses, and has served document requests of its own, and the court has ruled on various discovery motions.  *Id.* ¶¶ 15, 18–20, 29. "[C]ourts have not hesitated to abstain under similar circumstances."  *Abe*, 2016 WL 1275661, at *9 (abstaining where state action "has significantly progressed into discovery"); *Garcia*, 1999 WL 587902, at *7 (abstaining where state court had ruled on motion to dismiss and parties had exchanged discovery).  Accordingly, the fourth factor weighs in favor of abstention.

    E.    <u>State Law Supplies the Rule of Decision.</u>

The fifth factor—whether federal or state law provides the rule of decision—weighs in favor of abstention.  Where "there are only issues of state law" and "[n]o federal question is implicated," this factor weighs in favor of abstention.  *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 595 (S.D.N.Y. 2006).

Here, New York law, not federal law, governs the parties' claims, counterclaims, and defenses.  Even given that this Court sits in New York and the state court action is in Oklahoma, this factor favors abstention due to the absence of federal interests.  *Id.* at 593 (abstaining despite New York choice-of-law provision, recognizing that non-New York state courts "are equally competent to apply New York state law as is this Court"); *Radioactive, J.V. v. Manson*, 153 F.

Supp. 2d 462, 476 (S.D.N.Y. 2001) (abstaining because agreement's New York choice-of-law provision "does not necessarily make abstention inappropriate" and federal courts must give comity to state courts).

      F.     The Oklahoma Action Will Adequately Protect JPM's Rights.

The sixth factor—whether the state court proceeding will adequately protect JPM's rights—weighs in favor of abstention. This factor weighs in favor of abstention unless the state court cannot protect the plaintiff's substantive and procedural rights. *See Mouchantaf*, 368 F. Supp. 2d at 308.

JPM initially chose to litigate the same issues it raises in this action in Oklahoma, conclusively demonstrating the adequacy of that forum. *See, e.g.*, *Garcia*, 1999 WL 587902, at *8 (adequacy of state court "is evidenced by the fact that plaintiffs initially chose the state forum for litigation of their claims"). The mere fact that the Oklahoma court has not given JPM the outcome it desires does not make that forum inadequate. *Mazlin Trading Corp. v. WJ Holding Ltd.*, 2021 WL 1164127, at *6 (S.D.N.Y. Mar. 26, 2021) (abstaining where plaintiff elected to commence state court action and filed federal action after suffering defeat in state court). Accordingly, this factor, and each of the *Colorado River* factors, weighs in favor of abstention.

**III.    The Vexatious and Reactive Nature of this Action Weighs in Favor of Abstention.**

Finally, *Colorado River* abstention is also appropriate here given that JPM has brought a reactive federal lawsuit after suffering defeats in the state forum it originally chose. *See Am. Disposal Servs.*, 839 F.2d at 88 (applying *Colorado River* in case involving "a plaintiff who, having failed to obtain the desired relief in its home state forum of choice, brings a second proceeding in order to try again"). This federal action is a clear attempt to relitigate the same arguments the Oklahoma court has already rejected, and to get the quick, pre-discovery victory it failed to obtain in Oklahoma. Indeed, by filing its early summary judgment motion in this case

seeking judgment and foreclosure before any discovery is conducted, JPM seeks to reassert precisely its failed argument that there are no disputed issues of fact as to whether Avara is in default and whether it can foreclose on Avara Norman's assets. *Compare* Dkts. 6–9, *with* Baldwin Decl. Ex. E at 3–4 (Oklahoma court finding substantial disputed issues of fact). By asking the Court for proxy rights over Avara Norman as part of that pre-discovery motion, JPM again attempts to take immediate control over Avara Norman before giving Avara the opportunity to defend itself. *Compare* Dkt. 7 at 23–24, *with* Baldwin Decl. Ex. E (Oklahoma court denying receivership motion over Avara Norman). And by filing this action, JPM is forcing Avara US to bring its compulsory counterclaims in this Court, even though the Oklahoma Court already ruled that JPM must litigate those same claims in Oklahoma. *Compare* Baldwin Decl. Ex. J, *with* Baldwin Decl. Ex. F at 1–2 (Oklahoma court denying JPM's motion to dismiss).

JPM has been transparent abouts its motive to have this Court essentially overrule these preliminary rulings of the Oklahoma court. JPM filed this action immediately before the Oklahoma Supreme Court argument, and then pointed to the existence of this action as a basis for the Oklahoma Supreme Court to dismiss Avara Norman's counterclaims in Oklahoma. Baldwin Decl. ¶¶ 26–27. JPM also moved for a stay of the Oklahoma Action after the court compelled it to produce documents and shortly before additional discovery responses were due, and then filed this action immediately after obtaining that stay. *Id.* ¶¶ 22, 24, 26. These circumstances—in which JPM filed this action reactively in response to parallel state court litigation that has not gone its way—plainly warrant dismissal of this case.

For example, in *Telesco*, the Second Circuit held that abstention was warranted because the plaintiff's federal action "strongly indicate[d] the vexatious nature of the litigation" when brought after suffering three straight losses in state court. 765 F.2d at 358–63. In *Mazlin Trading*

*Corp.*, the court found abstention appropriate because the litigant filed the federal action after losing a motion to dismiss in state court—just as JPM did here.  2021 WL 1164127, at *6.  And in *Abe*, the court held that abstention was appropriate when the plaintiff "was merely seeking to pit the state and federal judicial systems against each other, and hoping for a better outcome in the latter."  2016 WL 1275661, at *10.[5]  "Permitting [JPM] to proceed in federal court over one year after the state court action commenced for the simple reason that [it is] not happy with the outcome of the state litigation would only serve to encourage litigants to forum shop during the pendency of litigation."  *See Best v. City of New York*, 654 F. Supp. 208, 211 (S.D.N.Y. 1986).  Accordingly, exceptional circumstances exist warranting *Colorado River* abstention.

## CONCLUSION

For the foregoing reasons, the Court should grant Avara US' motion to dismiss.

---

[5] *See also, e.g.*, *The Cadle Co. v. Cohen*, 173 F.3d 843, 843 (2d Cir. 1999) (affirming abstention where plaintiff "brought an action in federal court that was identical to a pending state court action in which it was also the plaintiff and in which it had suffered a setback"); *Mann v. Alvarez*, 1996 WL 535540, at *3 (S.D.N.Y. Sept. 20, 1996) (plaintiff's initiation of federal litigation after state court dismissed same claims "militate[d] strongly against this Court exercising jurisdiction"); *Gabelli v. Sikes Corp.*, 1990 WL 213119, at *6 (S.D.N.Y. Dec. 14, 1990) (abstaining because plaintiffs "commenced the instant federal action as a hedge against an unfavorable result in the Florida settlement proceedings").

Dated: October 10, 2023                    Respectfully submitted,

                                           /s/ Eric Brenner
                                           David Boies
                                           BOIES SCHILLER FLEXNER LLP
                                           333 Main Street
                                           Armonk, NY 10504
                                           Tel.: (914) 749-8200
                                           dboies@bsfllp.com

                                           Eric Brenner
                                           Sabina Mariella
                                           BOIES SCHILLER FLEXNER LLP
                                           55 Hudson Yards
                                           New York, NY 10001
                                           Tel.: (212) 446-2300
                                           ebrenner@bsfllp.com

                                           Richard Baldwin (*pro hac vice*)
                                           NYSTROM BECKMAN & PARIS LLP
                                           One Marina Park Drive
                                           Boston, MA 02210
                                           Tel.: (617) 778-9100
                                           rbaldwin@nbparis.com

                                           *Counsel for Defendant Avara US Holdings LLC*

## CERTIFICATION OF COMPLIANCE

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word.  Pursuant to the word count system in Microsoft Word, the total number of words in the Brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 6,979.

Dated: October 10, 2023                             Respectfully submitted,

                                                    /s/ Eric Brenner
                                                    David Boies
                                                    BOIES SCHILLER FLEXNER LLP
                                                    333 Main Street
                                                    Armonk, NY 10504
                                                    Tel.: (914) 749-8200
                                                    dboies@bsfllp.com

                                                    Eric Brenner
                                                    Sabina Mariella
                                                    BOIES SCHILLER FLEXNER LLP
                                                    55 Hudson Yards
                                                    New York, NY 10001
                                                    Tel.: (212) 446-2300
                                                    ebrenner@bsfllp.com

                                                    Richard Baldwin (*pro hac vice*)
                                                    NYSTROM BECKMAN & PARIS LLP
                                                    One Marina Park Drive
                                                    Boston, MA 02210
                                                    Tel.: (617) 778-9100
                                                    rbaldwin@nbparis.com


                                                    *Counsel for Defendant Avara US Holdings LLC*