**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**JPMORGAN CHASE BANK, N.A.,**

                    **Plaintiff,**

            **- against -**

**AVARA US HOLDINGS LLC,**

                    **Defendant.**

————————————————————————

**23-cv-7145 (JGK)**

**MEMORANDUM OPINION AND**
**ORDER**

**JOHN G. KOELTL, District Judge:**

     There are two motions pending before this Court. The first
motion is a motion to dismiss by the defendant, Avara US
Holdings LLC ("Avara US"), arguing that this action should be
dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1)
and the Colorado River abstention doctrine. ECF No. 37.

     The second motion is a motion for partial summary judgment
on Counts I, II, and III of the complaint by the plaintiff,
JPMorgan Chase Bank, N.A. ("JPMorgan"), pursuant to Federal Rule
of Civil Procedure 56. ECF No. 6. The plaintiff seeks judgment
on its breach of contract claim and declaratory judgment that
the plaintiff is entitled to foreclose on and/or exercise proxy
rights related to the pledged equity interests of the defendant.

     For the reasons explained below, the defendant's motion
pursuant to the Colorado River abstention doctrine is **granted,**

but the case is stayed rather than dismissed. The plaintiff's
motion for partial summary judgment is **denied without prejudice.**

**I.**

**A. Background**

Avara Pharmaceutical Services Ltd. (together with its
affiliates, "Avara") is a manufacturer of compounds and products
for pharmaceutical companies. Declaration of Leonard M. Levie
("Levie Decl.") ¶¶ 3-4, ECF No. 39. Defendant Avara US is an
affiliate holding company that owns 100% of the shares of Avara
Pharmaceutical Technologies, Inc. ("Avara Norman"), an affiliate
that owns and operates a manufacturing facility in Norman,
Oklahoma. Id. ¶¶ 9, 13. Avara US has no employees, operations,
or current business purpose other than as a holding company for
Avara Norman's equity and the equity of other Avara
subsidiaries. Id. ¶ 15. Avara US alleges that its only
substantial asset is its equity in Avara Norman. Id. ¶ 14.
JPMorgan alleges that Avara US downplays the value of its other
assets -- 100% of the shares of Avara Aiken Pharmaceutical
Services, Inc. ("Avara Aiken") and Avara Pharmaceutical
Services, Inc. -- because Avara Aiken has significant value.
Declaration of Matthew H. Massie ¶ 14, ECF No. 64.

On May 25, 2018, Avara entered into a credit agreement with
JPMorgan (as administrative agent, issuing bank, and sole
lender) for an initial credit facility totaling $25 million with

2

an original maturity date of May 25, 2020. Def.'s Resp. to Pl.'s
Rule 56.1 Statement ("Def.'s 56.1 Resp.") ¶¶ 1, 3-4, ECF No. 50.
As security for this loan, Avara granted JPMorgan security over
assets of Avara, including assets of Avara US, Avara Norman,
Avara Avlon Pharmaceutical Services Ltd. ("Avara Avlon"), and
Avara Shannon Pharmaceutical Services Ltd. ("Avara Shannon").
Id. ¶¶ 5-6, 9. On or about May 21, 2020, Avara and JPMorgan
amended the credit agreement to extend the maturity date to June
9, 2020. Id. ¶ 7.

On June 9, 2020, the parties entered into an Amended Credit
Agreement (together with the Amended Pledge and Security
Agreement, the "Agreement"). Id. ¶ 8; see also Declaration of
Christopher Harris ("Harris Decl."), Ex. 4, ECF No. 8-4.
JPMorgan alleges that, when the parties entered into the Amended
Credit Agreement, the parties agreed to remove Avara Avlon and
Avara Shannon -- located in the United Kingdom and Ireland,
respectively -- as loan guarantors, as reflected in the listing
of Avara Avlon and Avara Shannon as "excluded subsidiaries"
under the Agreement. Def.'s 56.1 Resp. ¶ 9. Avara US alleges
that the parties understood that, although Avara Avlon and Avara
Shannon were listed as excluded subsidiaries, JPMorgan would
still hold liens over their assets. Id. The Amended Credit
Agreement contained a maturity date of August 31, 2021. Id. ¶

10. On or about August 31, 2021, the maturity date was extended to November 30, 2021. Id. ¶ 17.

## B. Allegations of Breach

JPMorgan alleges that the loans matured on November 30, 2021, and Avara failed to repay the outstanding loans in the amount of $21.325 million, which resulted in default. Id. ¶¶ 45-46, 48. On or about December 2, 2021, JPMorgan provided notice of default to Avara US and certain affiliates. Id. ¶ 48.

On the other hand, Avara US alleges that JPMorgan first breached the Agreement by failing to perfect properly and protect its collateral rights in the assets of Avara Avlon, which entered administration and then liquidation. Harris Decl., Ex. 13, ¶¶ 73-78, ECF No. 8-13 ("SDNY Compl."). Instead, Avara US alleges, JPMorgan refused to collect the Avara Avlon cash collateral, refused to transfer its secured claims to Avara to collect the cash collateral and repay the loan, and released the collateral in breach of the Agreement, receiving none of the proceeds from the $25 million sale of Avara Avlon's assets. Id. Avara US alleges that those rights, if enforced, would have substantially -- if not entirely -- reduced the amounts allegedly owed to JPMorgan. Id. ¶ 78. For its part, JPMorgan claims that Avara agreed that JPMorgan has the unilateral right to choose which collateral to pursue or not pursue, Avara waived any defenses or claims based on JPMorgan's decisions regarding

4

any such collateral, Avara had already agreed to drop Avara Avlon and Avara Shannon as loan guarantors before the alleged default occurred, and any alleged lien release did not breach the Agreement. Def.'s 56.1 Resp. ¶¶ 18-43.

Avara US also alleges that JPMorgan breached the Agreement by failing either to grant Avara's request for an extension of the maturity date or to permit Avara to find a new lender. SDNY Compl. ¶¶ 3, 88, 154. More specifically, after Avara exercised its alleged right to request an extension, JPMorgan purported to negotiate over the extension, but when the then-stated maturity date passed without JPMorgan's agreeing to or rejecting the extension request, JPMorgan declared the loan in default and stopped collecting automatic payments of principal and interest from Avara's checking account at JPMorgan. Id. ¶ 88. Avara US also alleges that JPMorgan and Avara subsequently agreed on the material terms of an eighteen-month extension of the maturity date, but that agreement failed because JPMorgan conditioned any extension on Avara's releasing all claims against JPMorgan relating to its abandonment and release of the Avara Avlon collateral. Id. ¶ 90. JPMorgan counters that it had no obligation to extend the maturity date or continue negotiations. Def.'s 56.1 Resp. ¶ 41. Avara US also alleges that JPMorgan, through all of the above-mentioned actions, breached the implied covenant of good faith and fair dealing. Id. ¶ 193.

### C. Litigation

On August 17, 2022, JPMorgan filed a verified petition in Oklahoma state court against Avara Norman to foreclose on the mortgage and security interest over Avara Norman's real property and assets and to appoint a receiver over Avara Norman. Id. ¶ 182; see also Harris Decl., Ex. 9, ECF No. 8-9 ("Okla. Pet.").

In response, Avara filed an action in this District ("the SDNY action") on November 7, 2022. Avara moved for a temporary restraining order and a preliminary injunction, seeking to restrain JPMorgan from proceeding with the Oklahoma action based on the forum selection clause of the Agreement. The motion was denied the same day. Harris Decl., Ex. 12, ECF No. 8-12.

On November 10 and December 9, 2022, the Oklahoma court held two days of evidentiary hearings on JPMorgan's motion for expedited appointment of a receiver. Def.'s 56.1 Resp. ¶ 188. Then, on March 21, 2023, Avara Norman filed amended counterclaims in Oklahoma against JPMorgan, which included claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Id. ¶¶ 192-93.

On April 3, 2023, the Oklahoma court denied JPMorgan's receivership motion, finding that JPMorgan "ha[d] not established a strong probability of success on the merits" and that "there is a genuine dispute between the parties about whether there has been any default under the credit agreement,

6

which party (if any) defaulted, and the amount of damages owed from that default."[1] Id. ¶ 195; see also Declaration of Richard G. Baldwin ("Baldwin Decl."), Ex. E ¶ 6, ECF No. 40-5 ("Okla. Order Denying Mot. to Appoint Receiver").

On April 5, 2023, JPMorgan filed a motion to dismiss Avara's amended complaint in the SDNY action. Harris Decl., Ex. 15, ECF No. 8-15.

On May 22, 2023, the Oklahoma court denied JPMorgan's motion to dismiss the amended counterclaims, finding that the Oklahoma state court is "the proper forum for Avara Norman's counterclaims" and that "[p]ublic interests are best served by permitting Avara Norman to fully litigate its counterclaims in this Court, where its closely related defenses against [JPMorgan]'s claims will already be heard and decided." Def.'s 56.1 Resp. ¶ 196; see also Baldwin Decl., Ex. F ¶ 1, ECF No. 40-6 ("Okla. Order Denying Mot. to Dismiss"). The Oklahoma court also found that "[j]udicial economy is best served by permitting Avara Norman to litigate its counterclaims in Oklahoma" because requiring Avara to bring its claims in New York "would require two contentious civil actions among the same parties in two different court systems in two different jurisdictions to decide the exact same issues of fact and law." Okla. Order Denying Mot.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

to Dismiss ¶ 3. The Oklahoma court also held that Avara Norman's counterclaims were not barred by the Agreement and that Avara Norman alleged sufficient facts to support the counterclaims. Id. ¶¶ 4-10. On the same day that the Oklahoma court denied JPMorgan's motion to dismiss, it also granted Avara Norman's motion to compel production of documents. Baldwin Decl., Ex. G, ECF No. 40-7.

On June 5, 2023, Avara filed a notice of dismissal without prejudice in the SDNY action. Harris Decl., Ex. 17, ECF No. 8-17.

On July 12, 2023, JPMorgan moved for a protective order prohibiting the use of any discovery material produced in the Oklahoma case in any other litigation, asserting that it "cannot fathom a legitimate use for the materials JPMorgan produces in discovery for purposes other than the prosecution or defense of this action . . . ." Baldwin Decl., Ex. H ¶ 9, ECF No. 40-8.

On July 17, 2023 -- the same day that the Oklahoma court granted the protective order, id., Ex. I, ECF No. 40-9 -- JPMorgan filed an application with the Oklahoma Supreme Court to assume original jurisdiction and issue writs directing the Oklahoma court to dismiss Avara Norman's counterclaims based on the forum-selection clause in the Agreement. Id., Ex. J, ECF No. 40-10. JPMorgan also filed a motion to stay all further discovery and proceedings in the trial court pending the

Oklahoma Supreme Court's decision, which the trial court granted. Id. ¶¶ 22, 24, ECF No. 40. On August 7, 2023, The Oklahoma Supreme Court set the matter for oral presentation to the Supreme Court referee on August 15, 2023. Id. ¶ 25.

On August 11, 2023, JPMorgan filed this action against Avara US, alleging an amount due of no less than $24,922,363.52 as of July 19, 2023. Compl. ¶ 28, ECF No. 1. On the same day, JPMorgan also filed a motion for partial summary judgment, seeking expedited judgment prior to any discovery. ECF No. 6. On September 11, 2023, the Oklahoma Supreme Court unanimously declined to assume original jurisdiction, and the stay of the Oklahoma action was lifted. Baldwin Decl. ¶ 28. Avara US filed a motion to dismiss this action on October 10, 2023. ECF No. 37.

## II. Motion to Dismiss

JPMorgan argues that "the Court should first decide the pending partial summary judgment motion . . . ." Pl.'s Opp'n 22, ECF No. 62. To the contrary, the Court must decide the preliminary question of whether to "decline to exercise or postpone the exercise of its jurisdiction," in view of the pending action in Oklahoma. Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976). To decide JPMorgan's motion for partial summary judgment in the face of the pending motion to dismiss based on Colorado River abstention would be unreasonable. JPMorgan's motion asks the Court to

9

decide on a motion for summary judgment issues that are before the Oklahoma court and that Avara urges should be decided by the Oklahoma court pursuant to Colorado River abstention. The first issue to be decided therefore is whether this Court should abstain pursuant to the Colorado River doctrine. See, e.g., Mazlin Trading Corp. v. WJ Holding Ltd., No. 19-cv-7652, 2021 WL 1164127, at *1 (S.D.N.Y. Mar. 26, 2021) (denying motion to confirm an arbitration award as moot where the court granted the motion to dismiss based on the Colorado River abstention doctrine).

## A. Standard of Review

"[F]ederal courts have a virtually unflagging obligation to exercise their jurisdiction." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012). However, in Colorado River Water Conservation District v. United States, "the Supreme Court determined that a federal court may decline to proceed with a case, which is properly before it, when parallel litigation is pending in a state court." Sitgraves v. Fed. Home Loan Mortg. Corp., 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017). In such a case, "[t]here must be exceptional circumstances, based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. (citing Colorado River, 424 U.S. at 813, 817-18). The

decision whether to stay or dismiss a federal action on <u>Colorado River</u> abstention grounds "does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . ." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16 (1983).

To determine whether to stay or dismiss an action based on the <u>Colorado River</u> doctrine, the Court must determine whether there is another "parallel" action pending and then whether the relevant factors explained in the <u>Colorado River</u> case have been shown to exist. <u>See</u> <u>Niagara Mohawk Power</u>, 673 F.3d at 100.

"A motion to dismiss based on <u>Colorado River</u> is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure." <u>Iacovacci v. Monticciolo</u>, No. 18-cv-7984, 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. <u>See</u> <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. <u>Id.</u> Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings to determine whether jurisdiction exists. <u>See</u> <u>Kamen v. Am. Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986). In so

doing, the Court is guided by that body of decisional law that has developed under Rule 56. See id.

### B. Discussion

#### i. Parallelism

"In deciding whether to abstain under Colorado River, a district court must first determine whether the federal and state court cases are parallel." U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A. v. E. Fordham DE LLC, 804 F. App'x 106, 107 (2d Cir. 2020). "Federal and state proceedings are parallel for purposes of abstention when the two proceedings are essentially the same -- when there is an identity of parties, and the issues and relief sought are the same." Id. "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Abe v. New York Univ., No. 14-cv-9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016).

In this case, the parties in this action and the Oklahoma action are substantially the same. "[E]xact identity of parties is not required for cases to be found to be parallel." Pappas Harris Cap., LLC v. Bregal Partners, L.P., No. 20-cv-6911, 2021 WL 3173429, at *5 (S.D.N.Y. July 27, 2021). Indeed, a court in this District "found concurrent actions parallel where none of the defendants in the actions were the same" where "the same

12

events underlay both actions, and the defendants in the state
and federal actions were closely related . . . ." Iacovacci,
2019 WL 2074584, at *5 (citing Cong. Talcott Corp. v. Roslin,
No. 95-cv-7698, 1996 WL 499337, at *3 (S.D.N.Y. Sept. 4, 1996)).
"Parties are substantially similar when the interests of the
parties in each case are congruent[,]" namely "when they would
benefit from the same outcome." Pappas Harris Cap., 2021 WL
3173429, at *5. In this case, the same events underlie this
action and the Oklahoma action. "[I]n both actions [JPMorgan] is
seeking recovery as a result of [Avara US's] breaches under the
loan and guaranty." Tuebor Reit Sub LLC v. Paul, No. 19-cv-8540,
2020 WL 4897137, at *5 (S.D.N.Y. Aug. 19, 2020). Furthermore,
the defendant in this action and the defendant in the Oklahoma
action are closely related. The defendant in this action --
Avara US -- is a holding company for the assets of the defendant
in the Oklahoma action -- Avara Norman. See Levie Decl. ¶¶ 14-
15. Finally, the defendants in both actions have congruent
interests: they would all benefit from demonstrating that
JPMorgan breached the Agreement.

   JPMorgan argues that the fact that Avara US is not a
defendant in the Oklahoma Action is critical because dismissal
of the federal proceeding would leave Avara US free from any
binding judgment. Pl.'s Opp'n 7. However, there are many cases
in the Second Circuit where courts have found the parties were

substantially similar, even though certain federal defendants were not parties to the state cases. See, e.g., Iacovacci, 2019 WL 2074584, at *5 (finding cases parallel even though the federal defendant was not named in the state case); see also Pappas Harris Cap., 2021 WL 3173429, at *6 (collecting cases). In any event, at the oral argument on these motions, Avara US consented to jurisdiction in Oklahoma. See Oral Arg. Tr. ("Tr.") 10:13-23, ECF No. 91. As such, the plaintiff's argument that "dismissal of the federal proceeding would leave [Avara US] free from any proceeding on issues in question," Pl.'s Opp'n 7, is no longer true. JPMorgan is free to join Avara US in the Oklahoma action that JPMorgan brought and assure that any result in the Oklahoma action will be fully binding on Avara US. Accordingly, the parties in this action and the Oklahoma action are substantially the same.

As with the parties, the subject matter of this action and the Oklahoma action are also substantially the same. "[T]wo proceedings [a]re parallel" where "both actions are centered on the same parties' Loan . . . Agreement and whether either party breached its obligations under that agreement." U.S. Bank Nat'l Ass'n, 804 F. App'x at 107; see also Tuebor Reit Sub, 2020 WL 4897137, at *5. This is true even where the specific claims and claimants in the two actions are different. See U.S. Bank Nat'l Ass'n, 804 F. App'x at 107 ("U.S. Bank brought a foreclosure

14

action in federal court, whereas East Fordham brought breach-of-
contract claims seeking declaratory relief, specific
performance, and damages in state court . . . .”). The pertinent
question is whether the federal action cannot be resolved
without also resolving the state court claims. See id. (“To
determine if East Fordham defaulted on its loan and foreclosure
is appropriate, the federal court must first consider whether
East Fordham would have satisfied its loan but for U.S. Bank’s
alleged breach.”). As the defendant in this case correctly
argues, the plaintiff’s “claims in both for[a] are based on the
same allegations that Avara Group is in default of the same
Agreement for failing to repay the same purported loan balance
outstanding.” Def.’s Mot. to Dismiss 11, ECF No. 38. Both this
Court and the Oklahoma court “will be asked to determine, among
other things: whether a default occurred, whether Avara Group
breached the Agreement, whether [JPMorgan] breached the
Agreement, and any amounts due under the Agreement.” Id. 11-12.
Indeed, the Oklahoma court, recognizing this fact, found that
concurrent litigation in this Court and in Oklahoma would amount
to “two contentious civil actions among the same parties in two
different court systems in two different jurisdictions to decide
the exact same issues of fact and law.” Okla. Order Denying Mot.
to Dismiss ¶ 3. The Oklahoma Supreme Court affirmed this

decision. <u>See</u> Baldwin Decl. ¶¶ 21, 28. In short, the subject matter of this action and the Oklahoma action are identical.

Finally, the relief requested in the two actions is also substantially the same. Two actions are parallel if the "main form of relief" sought is the same and if the relief covers "the same essential issues," even if "part of the relief requested in the federal action differs from the relief requested in the state action . . . ." <u>See</u> <u>Iacovacci</u>, 2019 WL 2074584, at *6. "Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." <u>Telesco v. Telesco Fuel & Masons' Materials, Inc.</u>, 765 F.2d 356, 362 (2d Cir. 1985). In these cases, the relief the plaintiff seeks -- both in this action and in Oklahoma -- is a judgment for the amount it contends is due under the Agreement. Although the plaintiff pursues different means of recovery -- control over Avara US and Avara Norman, respectively -- there is only one source of funds that the plaintiff is seeking because Avara US's only substantial asset is its equity in Avara Norman. <u>See</u> Levie Decl. ¶¶ 14-15. Moreover, even if the plaintiff disputes the proportion of Avara US's assets traceable to Avara Norman, <u>see</u> Pl.'s Opp'n 11 n.4, it does not dispute the defendant's assertion that if the plaintiff successfully forecloses on the property at issue in the Oklahoma action, that collateral will

16

satisfy the alleged loan obligation and moot this action, <u>see</u>
Def.'s Mot. to Dimiss 14. In fact, "[the plaintiff] itself has
admitted that it may be paid in full as a result of the
[Oklahoma] state court proceedings, which would moot this
proceeding in its entirety." <u>Tuebor Reit Sub</u>, 2020 WL 4897137,
at *5; <u>see also</u> Tr. 41:15-16, 47:11-14.

The plaintiff contends that the issues are different
because in this case the plaintiff seeks a declaratory judgment
on the right to foreclose on and/or exercise proxy rights in
Avara US shares in its subsidiaries including Avara Norman and
the plaintiff seeks foreclosure of and/or the appointment of a
receiver over Avara Norman's real estate in the Oklahoma case.
<u>See</u> Pl.'s Opp'n 10-11. But the substantive relief in both cases
is the same: it would give JPMorgan control over Avara Norman
which is apparently the most valuable asset of Avara. Moreover,
the Court of Appeals for the Second Circuit has found that the
issues in two actions can be substantially the same even where
the specific claims and claimants in the two actions are
different. <u>See</u> <u>U.S. Bank Nat'l Ass'n</u>, 804 F. App'x at 107.
Furthermore, raising a different theory of recovery alone is not
enough to differentiate otherwise parallel suits. <u>See</u> <u>Telesco</u>,
765 F.2d at 362.

The plaintiff also argues that the mere fact that the cases
have a common issue does not make the two actions parallel. <u>See</u>

17

Pl.'s Opp'n 12. While that may be true as a general statement, in this case, the common issues -- including whether Avara Group and/or JPMorgan defaulted under the same Agreement -- are exactly "the same essential issues" that render these actions parallel. See Iacovacci, 2019 WL 2074584, at *6.

In summary, this action and the action before the Oklahoma court are parallel.

### ii. **Colorado River** Factors

Having found that the two actions are parallel, the Court must then proceed to weigh the Colorado River factors. See U.S. Bank Nat'l Ass'n, 804 F. App'x at 107. Those factors are:

> the assumption by either the state or federal court of jurisdiction over any res or property, the inconvenience of the federal forum, the avoidance of piecemeal litigation, the order in which jurisdiction was obtained, whether federal or state law provides the rule of decision, and whether the state court proceeding will adequately protect the rights of the party seeking to avail itself of federal court jurisdiction.

Am. Disposal Servs., Inc. v. O'Brien, 839 F.2d 84, 87 (2d Cir. 1988).

In this case, the balance of the Colorado River factors points decidedly toward abstention. First, the Oklahoma court has exercised jurisdiction over substantially the same property that the plaintiff seeks to foreclose on in this action, namely Avara Norman's equity and real property. Although the plaintiff attempts to draw a distinction between Avara US's shares and

Avara Norman's Oklahoma real estate, see Pl.'s Opp'n 15-16,
Avara US's shares "remain inextricably linked with" Avara
Norman's equity and real property located in Oklahoma and are
"requested as an alternative to relief affecting property under
the [Oklahoma court's] jurisdiction." Phillips v. Citibank,
N.A., 252 F. Supp. 3d 289, 299 (S.D.N.Y. 2017).

Second, litigating in this Court would be inconvenient.
"[D]uplicative, simultaneous litigation is necessarily
inconvenient." Pappas Harris Cap., 2021 WL 3173429, at *11. In
this case, the Oklahoma court has already heard days of
testimony, decided several motions, and begun the process of
discovery. See Baldwin Decl. ¶¶ 6, 9, 13-15, 19. "By contrast,
the federal court proceedings barely have addressed the
underlying claims, and have instead concentrated on the
propriety of bringing suit in federal court at all." Am.
Disposal Servs., 839 F.2d at 88. Furthermore, the plaintiff "is
a large corporation which would not seriously be inconvenienced
by litigation in another part of the country," even though its
principal office and counsel are located in New York City. Bank
of New York v. Bin Saud, 628 F. Supp. 474, 477 (S.D.N.Y. 1986).

Third, litigating in this Court would risk piecemeal
litigation. "The predominant concern expressed in Colorado River
and its progeny is the avoidance of piecemeal or purely
duplicative litigation and the concomitant waste of judicial

resources." <u>Mouchantaf v. Int'l Modeling & Talent Ass'n</u>, 368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005). Piecemeal litigation also creates the possibility of "contradictory findings of liability would cause friction between state and federal courts." <u>De Cisneros v. Younger</u>, 871 F.2d 305, 308 (2d Cir. 1989). The foregoing risks are present in this case. Should this action be allowed to proceed, Avara US and Avara Norman could be faced with conflicting determinations of liability from this action and the Oklahoma action, respectively. That, in turn, would raise complicated questions about preclusion.

Fourth, the Oklahoma action obtained jurisdiction first. JPMorgan filed this action nearly a year after it had filed its action in Oklahoma. Where "there have been extensive, if inconclusive, proceedings in the original action, including . . . discovery . . . and several interlocutory decisions in the state court[,]" while "[t]he federal suit, on the other hand . . . has not moved beyond the initial pleadings and the motion to dismiss . . . , it hardly seems wise to permit plaintiff to start anew in federal court." <u>Telesco</u>, 765 F.2d at 363. Discovery has commenced in the Oklahoma action. The plaintiff produced several thousand pages of documents regarding its position over the assets of the Avara Avlon subsidiary after seeking a protective order from the Oklahoma court. <u>See</u> Baldwin Decl. ¶¶ 15-20, 29. The Oklahoma court has decided multiple

motions and conducted a two-day evidentiary hearing. See id. ¶¶ 6, 9, 13-14. In this action, however, the Court is only now considering the motion to dismiss and the motion for partial summary judgment that was filed simultaneously with the complaint.

Fifth, although New York state law provides the rule of decision, the Oklahoma court is equally competent to apply New York state law, and this factor does not outweigh the others favoring abstention. "[Out-of-state] courts are equally competent to apply New York state law as is this Court." Goldentree Asset Mgmt., L.P. v. Longaberger Co., 448 F. Supp. 2d 589, 593 (S.D.N.Y. 2006); see also Radioactive, 153 F. Supp. 2d 462, 476 (S.D.N.Y. 2001) ("Simply because this court sits in New York does not mean that it can apply New York state law any better than the California court. Federal courts are obliged to give comity to state courts and not to assume expertise where none may lie.").

Finally, the Oklahoma proceeding will adequately protect the plaintiff's rights. This factor weighs in favor of abstention unless the party seeking federal court jurisdiction demonstrates that the state court "cannot protect [that party's] procedural and substantive rights" or that "the full range of remedies available to [the party] in this court would be [un]available in the [state] action." Mouchantaf, 368 F. Supp. 2d at 308. The

21

plaintiff in this case has made no such showing. In fact, the plaintiff has demonstrated its confidence in the state court's ability to adjudicate its claims thoroughly and fairly, as evidenced by the plaintiff's commencement of the action in Oklahoma state court. See Am. Disposal Servs., 839 F.2d at 88.

In summary, the Colorado River factors point decidedly toward abstention in this case.

### iii. Additional Factor

"As an additional factor, the Supreme Court has found considerable merit in the idea that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River." Abe, 2016 WL 1275661, at *6. In this Circuit, "a plaintiff who, having failed to obtain the desired relief in its home state forum of choice, brings a second proceeding in order to try again," Am. Disposal Servs., 839 F.2d at 88, "strongly indicate[s] the vexatious nature of the litigation." Telesco, 765 F.2d at 363.

As the defendant argues, see Def.'s Mot. to Dismiss 21, and the plaintiff does not dispute, see Pl.'s Opp'n 21-22, the plaintiff brought this action only after it brought an action in Oklahoma and lost a motion to dismiss Avara Norman's counterclaims. The plaintiff filed this action immediately after obtaining a stay in the Oklahoma action and immediately before

argument in the Oklahoma Supreme Court, where it pointed to the existence of this action as a basis for the Oklahoma Supreme Court to dismiss Avara Norman's counterclaims. See Baldwin Decl. ¶¶ 21-27. In conclusion, the additional factor of the vexatious or reactive nature of the federal litigation counsels deferring to the parallel Oklahoma litigation under Colorado River.

Accordingly, the defendant's motion to abstain pursuant to Colorado River is **granted.** "The decision whether to stay or dismiss a federal suit under the Colorado River abstention doctrine is committed to the discretion of the district court." Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 327 (2d Cir. 1986) (citing Cone, 460 U.S. at 19); Pappas Harris Cap., 2021 WL 3173429, at *12. In this case a stay rather than dismissal is more appropriate because it is unclear at this point whether any claims would remain after the full disposition of the Oklahoma action. Therefore, the case is stayed pending resolution of the Oklahoma action.

### III. Motion for Partial Summary Judgment

Finally, the plaintiff has moved for partial summary judgment and seeks judgment on its breach of contract claim and declaratory judgment that the plaintiff is entitled to foreclose on and/or to exercise proxy rights related to the pledged equity interests of the defendant.

However, deciding the motion to dismiss based on Colorado River abstention in the defendant's favor necessarily counsels in favor of denying JPMorgan's motion for partial summary without prejudice. Deciding the merits of the motion for partial summary judgment would necessarily entail deciding issues that should be decided by the state court in Oklahoma. Therefore, the plaintiff's motion for summary judgment as to Counts I, II, and III of the complaint is **denied without prejudice.**

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to abstain is **granted**, and the plaintiff's motion for partial summary judgment is **denied without prejudice.** This action is stayed pending resolution of the Oklahoma action. The parties should provide a status report to the Court upon resolution of the Oklahoma action. The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           February 21, 2024

_____
         John G. Koeltl
    United States District Judge

24